Filed 10/2/23; Certified for Publication 10/25/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| STEVE SNOECK, | B321566 |
| --- | --- |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC708964 |
| v. | |
| EXAKTIME INNOVATIONS, INC., | |
| Defendant and Respondent. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Barritt Smith Miner, Perry G. Smith and Danielle N. Riddles for Plaintiff and Appellant.

Jackson Lewis, Michael A. Hood and Dylan B. Carp for Defendant and Respondent.

─────────────

Plaintiff Steve Snoeck appeals from the trial court's order awarding him $686,795.62 in attorney fees after the court applied a .4 negative multiplier to its $1,144,659.36 adjusted lodestar calculation "to account for [p]laintiff's counsel's . . . lack of civility throughout the entire course of this litigation."  The court awarded Snoeck fees after he prevailed on one of his six causes of action against his former employer ExakTime Innovations, Inc. on his complaint for disability discrimination under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and related causes of action.  The jury awarded Snoeck $130,088 in damages on his claim ExakTime failed to engage in a good faith interactive process with him.  On Snoeck's appeal, we affirmed that verdict.

Snoeck contends the $457,863 reduction in attorney fees based on his counsel Perry Smith's incivility must be reversed for several reasons.  In essence, he argues that—because the fee reduction was not associated with any costs—the court impermissibly applied it to punish Smith and had no legal authority to shift attorney fees to defendant as a sanction. ExakTime argues the trial court's downward adjustment to the lodestar sum was permissible under *Ketchum v. Moses* (2001) 24 Cal.4th 1122 (*Ketchum*) because civility is an aspect of an attorney's skill, as this District stated in *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734 (*Karton*) and on which the trial court relied.

We agree a trial court may consider an attorney's pervasive incivility in determining the reasonableness of the requested fees. A court may apply, in its discretion, a positive or negative multiplier to adjust the lodestar calculation—a reasonable rate times a reasonable number of hours—to account for various

factors, including attorney skill. (*Ketchum, supra*, 24 Cal.4th at pp. 1131–1134; *Karton, supra*, 61 Cal.App.5th at pp. 744–745, 747.) The record before us amply supports the trial court's finding that plaintiff's counsel was repeatedly, and apparently intentionally, uncivil to defense counsel—and to the court—throughout this litigation. We thus find no abuse of discretion and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Earlier proceedings*

Snoeck sued ExakTime for six claims: five claims under the FEHA—failure reasonably to accommodate a known or perceived disability, failure to engage in a good faith interactive process, disability discrimination, failure to prevent discrimination and retaliation, and retaliation—and a claim for wrongful termination in violation of public policy. In June 2019, a jury returned a verdict in Snoeck's favor on his claim for failure to engage in a good faith interactive process and found in favor of ExakTime on Snoeck's five other claims. The jury awarded Snoeck $58,088 in economic damages and $72,000 in non-economic damages, for a total of $130,088. In October 2019, the trial court denied Snoeck's motions for judgment notwithstanding the verdict (JNOV) and for a new trial. Snoeck appealed, and we affirmed the judgment. (See *Snoeck v. ExakTime Innovations, Inc.* (Oct. 29, 2021, B302178) [nonpub. opn.] (*Snoeck I*).[1] In affirming the judgment, we

---

[1] Snoeck also appealed from the trial court's order denying the costs he incurred after he rejected ExakTime's settlement offer under Code of Civil Procedure section 998 (998 offer) that was greater than the jury awarded. We reversed that order

3

concluded the court erred in giving CACI No. 2512, a jury instruction applicable to mixed-motive cases, but the error was not prejudicial. (*Snoeck I.*) Snoeck petitioned for rehearing, which we denied. The California Supreme Court denied Snoeck's petition for review and request for publication of *Snoeck I*.

After the matter was remanded, Snoeck filed a peremptory challenge under Code of Civil Procedure section 170.6 to disqualify the trial judge. The court denied the peremptory challenge as untimely. Snoeck did not file a writ petition to seek review of the denial.[2]

## 2.     *Snoeck's motion for attorney fees*

Snoeck then filed a motion for attorney fees under Government Code section 12965, former subdivision (b), now subdivision (c)(6), as the prevailing plaintiff on a FEHA claim. He asked for the lodestar amount of $1,193,870 plus a 1.75 multiplier for a total of $2,089,272.50. ExakTime opposed the motion. It argued the lodestar should be reduced based on several grounds, including, evidence of excessive billing; and/or Snoeck's attorneys' "[d]eceptive, improper and unprofessional conduct." That conduct, ExakTime said, should be considered in the court's discretion in "evaluating the credibility of the amount and reasonableness of" the requested fees.

---

finding the court erred in permitting ExakTime to submit evidence of the offer in its reply brief. (*Snoeck I*.)

[2]     Nonetheless, at the hearing on Snoeck's fee motion, Smith mentioned the court's denial of Snoeck's peremptory challenge "to be sure . . . the court believe[d] that it could decide this motion without any bias toward plaintiff's counsel."

4

ExakTime noted that, in the moving papers, Snoeck's attorneys had accused ExakTime of "exploiting the Court, utilizing 'underhanded' tactics, presenting a 'sham defense,' and, in general arguing that defense counsel perpetrated a fraud on the Court." It attached several emails from Snoeck's counsel to ExakTime's counsel sent in March, May, June, and December 2019; April, August, and November 2020; March 2021; and March 2022. In them, Smith accused ExakTime's counsel of knowingly misrepresenting the law and facts to the trial and appellate courts, misconduct, and lying; referred to counsel's actions as "the Marchlewski thing again" (referring to ExakTime's primary attorney Theresa M. Marchlewski) and stated Marchlewski was "cringeworthy" and sold the court "the big lie"; referred to defense counsel as having viewed the trial court "as an easy mark," having "made a total fool of" (all capitals omitted) and "exploited" the trust of the trial judge; having committed "a brazen con," and having "duped" the trial and appellate courts.

ExakTime argued Smith's emails "served no purpose in advancing Snoeck's cause," but it appeared he was seeking compensation for them in his block billing on eight dates. ExakTime argued Snoeck's attorneys' fees should be reduced by the amount charged after the 998 offer, or alternatively reduced to 16.6 percent of the billed hours, proportional to their success rate. It also asked the court to apply a 25 percent "deduction of Smith's billings due to their patent excessiveness."[3]

---

[3]    ExakTime also argued the court should use the same lower "insurance rates" ExakTime's counsel had charged.

5

Snoeck's reply described ExakTime's opposition "as an effort to profit from its successful misrepresentations of law and fact in this case" and "rewarding such wrongful conduct by reducing fees would be unjust." Snoeck asserted, "ExakTime successfully used *deliberate misrepresentations of law* and fact to hinder Snoeck's ability to seek and obtain verdicts/award based on accurate law and facts." (Original italics.) The reply accused ExakTime of having "engaged in a knowing fraud on the trial court" and "in calculated misrepresentations to the courts in this case as an effort to limit Snoeck's success in obtaining a remedy."[4]

### 3. *The trial court's tentative ruling*

The trial court posted a tentative ruling before the April 18, 2022 hearing that partially granted Snoeck's motion, awarding him $686,795.62 in attorney fees. The court posted a revised tentative announcing the same award, but with "mostly

---

[4] Although not before the trial court, Snoeck included in his appellant's appendix an April 6, 2022 email he sent ExakTime's counsel before filing his reply. That email states in part, "What I am wondering is **why you provided no denial of having committed . . . fraud on the trial court, and of having committed the second fraud in the Court of Appeal, in your opposition papers or declarations**." "I also did not see you correct your earlier misrepresentations. Please do." (Original italics and boldface type.) It's unclear what Snoeck hoped to gain by including this email in his appendix. If it was to make a record, that record serves only to reflect poorly on his counsel.

grammatical, . . . [non-]substantive" changes, which the court ultimately adopted as its final order.[5]

The trial court found Snoeck's counsel's individual hourly rates—$750 per hour for Smith and $600 and $535 per hour for two other attorneys—were reasonable. The court also corrected the requested lodestar for computation errors. The court applied a 20 percent "across the board reduction," however, to the number of hours Snoeck's counsel had requested to address billing concerns ExakTime raised, including overstaffing, duplicative and vague billing, and other issues. That reduction reduced the arithmetically corrected lodestar figure from $1,192,353.50 to $953,882.80.

The court then applied a 1.2 *positive* multiplier to account for the contingent nature of Snoeck's counsel's fees, including

---

[5] The changes included deletion of some previously-quoted language from Smith's emails to ExakTime's counsel, such as reference to the trial judge's name. Snoeck makes much of the court having revised its tentative, claiming the court "deleted evidence of ExakTime's counsel's lack of candor to the court and ExakTime's fabricated and unsupported defense." The trial court's tentative ruling was tentative. The court was free to reword it or to change it completely. (See *Magno v. The College Network, Inc.* (2016) 1 Cal.App.5th 277, 285, fn. 2 [court's tentative ruling is not binding on the court].) That the court shortened some of the excerpted emails to focus on the issue—counsel's incivility—and omitted some of Smith's more belittling comments about the court, does not demonstrate the court somehow was hiding ExakTime's alleged misconduct as Snoeck seems to imply. Smith's accusations were not evidence of misconduct. In any event, Snoeck has failed to show how the court's quotation of Smith's emails constitutes error.

7

the fact counsel had worked on the case for four years "without being paid." The court explained that, at the statutory 10 percent interest rate per year, Snoeck's counsel should be awarded a 1.4 multiplier for work performed four years ago, a 1.3 multiplier for work done three years ago, a 1.2 multiplier for work from two years ago, and 1.1 multiplier for one-year old work. As that calculation would be too cumbersome, the court applied the median of 1.2 for all work done. Applying the 1.2 multiplier "for the time value of money" to the reduced $953,882.80 lodestar resulted in a revised lodestar of $1,144,659.36. Snoeck does not challenge the court's 20 percent reduction of the lodestar or the application of a 1.2 multiplier rather than his requested 1.75 multiplier.

Finally, the court applied a negative multiplier to account for Snoeck's counsel's lack of civility. The court's order reproduced "some" of the "uncivil language" from Smith's emails that ExakTime had attached. The court included 13 quoted statements from 12 different emails—two from June 2019 before the verdict, three from 2020 after Snoeck filed his appeals from the judgment and order taxing costs, seven from March 2021 while those consolidated appeals were pending, and one email sent in March 2022 months after this court issued its opinion in *Snoeck I*.

After quoting Smith's emails for about two and half pages, the court noted Smith's "incivility was not only directed to opposing counsel; it was also directed to the Court." The court remarked that, in its October 8, 2019 minute order, more than two years ago, it had stated, " 'Plaintiff's counsel's tone of voice (which was not reflected in the Court Reporter's record) was both belittling and antagonistic; at times it verged on the

8

contemptuous.' " The court continued, "The language quoted above is uncalled-for and unacceptable. Plaintiff counsel's ad hominem attacks were unnecessary for the zealous representation of his client." Citing caselaw, the court noted the absence of civility " 'heightens stress and debases the legal profession,' " and reminded Smith that the California Rules of Court,[6] rule 9.7 requires the attorney oath to conclude with, " ' "As an officer of the court, I will strive to conduct myself at all times with dignity, courtesy and integrity." ' "

Relying on *Karton*, the court stated, "Civility is not just a moral good. 'Attorney skill is a traditional touchstone for deciding whether to adjust a lodestar. [Citation.] Civility is an aspect of skill.' " (Quoting *Karton, supra*, 61 Cal.App.5th at p. 747.) The court ruled it would apply "a .4 negative multiplier to account for Plaintiff's counsel's repeated and apparently intentional lack of civility throughout the entire course of this litigation." Again quoting *Karton*, the court noted, " '[C]ivility in litigation tends to be efficient by allowing disputants to focus on core disagreements and to minimize tangential distractions. It is a salutary incentive for counsel in fee-shifting cases to know their own low blows may return to hit them in the pocketbook.' " (*Ibid.*) Applying the .4 negative multiplier to the $1,144,659.36 revised lodestar yielded a final award of $686,795.62 in attorney fees.

4.    ***The hearing on Snoeck's fee motion***

At the hearing, Smith acknowledged having received the court's tentative and argued on behalf of Snoeck. He noted

---

[6]    References to rules are to the California Rules of Court unless indicated otherwise.

9

the court's tentative "did not address . . . Snoeck's claims regarding the ethical lapses of the defense." He then quoted from rules 3.1 (meritorious claims and contentions) and 3.3 (candor toward the tribunal) of the Rules of Professional Conduct. The court interrupted, "If you're arguing that defense counsel had breached their ethical duties, I'm making no ruling on that. Defense counsel has not submitted any application for attorneys' fees, so I'm not sure where you're going on that." Smith then argued *Karton* concerned the additional litigation costs incivility could cause. Smith and the court engaged in a lengthy colloquy; we reproduce only portions of it.

Court:     "It's more than simply that it increases fees. It debases the profession."

Smith:     "[T]he point [in *Karton*] is that [incivility] can result in overlitigation."

Court:      "Well, no, that's not quite true. . . . [T]he [*Karton*] case says . . . [i]t is a salutary incentive for counsel in fee-shifting cases to know their own low blows may return to hit them in the pocketbook."

Smith:     "Right. They may if, as it says at the outset, [']judges permissibly may consider whether an attorney's incivility in the litigation has affected the litigation cost[s].['] [¶] . . . We have a public policy here. I'm bringing a FEHA claim as an attorney who's entitled to a full award of fees because of the incentivizing that the Legislature want to do [*sic*] to bring these cases. I'm entitled to that full award of fees

10

unless there's a special circumstance that
makes giving that award unjust."

Court: "And you believe incivility is not such a special
circumstance?"

Smith: "This court is saying . . . civility is an ethical
component of professionalism. [¶] Now, is the
court aware, because I'm not, of a particular
rule of professional conduct that addresses
civility?"

Smith again argued defense counsel violated rule 3.1 of
the Rules of Professional Conduct by presenting "a mixed-motive
defense in a case that does not have a mixed-motive defense."
A further colloquy ensued:

Court: "You're arguing, as I understand it, the defense
is either complicit in the incivility or has
themselves been incivil or has incited you
to being incivil, something of that sort. And
you're arguing that the defendant has misled
this court and the court of appeal; is that
correct?"

Smith: "It did. And there's been no denial of that."

Court: "Okay. And the court of appeal has ruled that
it affirmed, they find no prejudicial error in
anything that was done and affirm."

Smith: "Right. Well, the court of appeal actually found
(reading [from the opinion]) this was not a
mixed-motive case."

"This court certainly knows and the defense
has not denied that it's impossible that the jury
found that Snoeck could not work with an

11

accommodation because it gave him lost income damages for the failure to interact. You can't find both a lawful termination and an unlawful termination at the same time. Their argument was a false statement of fact to the Court of Appeal, which the Court of Appeal relied on after [the defense] made a false argument of law on mixed motive to the trial court."

Court: "[Y]ou're arguing . . . that the defendant made a false statement to the Court of Appeal?"

Smith: "And this court, yes, multiple times."

Court: "What is the purpose of that argument? Is this court supposed to give you—increase your fees because they made a false statement?"

Smith: "Absolutely it is. And this is why, this court is concerning itself with civility. (Reading [from *Karton*]) [']Civility is an ethical component of professionalism.['] Not even something that's stated in the Rules of Professional Conduct but implied by what we are striving to do under oath that the court quoted."

Smith continued to argue ExakTime's counsel violated an "actual canon, actual Rules of Professional Conduct." He asserted defense counsel, and the trial court, "completely" ignored the authority he'd cited. Smith again argued, "The jury did not find [Snoeck] couldn't work. They could not possibly have found that. That's another misrepresentation of law, in fact, to the Court of Appeal. But the court is not concerned with those ethical lapses that cost an enormous amount of money, that cost those appeals. Those appeals were only necessary because of the

12

misrepresentation."  The court reminded counsel that he "lost on appeal" because the court affirmed the verdict.  Smith went on, "Were we . . . supposed to guess that [ExakTime's] appellate counsel would represent that the jury found something it couldn't possibly under law have found?  We were supposed to guess that?  And that the Court of Appeal would then adopt that false statement and go with it?"

The court acknowledged Snoeck's "appeal was not frivolous."  But in response to Smith's insistence that the Court of Appeal had found error, the trial court reiterated it was found to have "made no prejudicial instruction or evidentiary errors."  Smith continued to argue with the trial court:

Smith:  "But is this court not concerned with why they found no prejudice, which it would stand [*sic*] throughout its opinion that the jury found that Snoeck could not work as a matter of law?  That was based on a misrepresentation.  The court's not concerned that that misrepresentation is what the court of appeal relied, and what we all know that's a legal impossibility?"

Court:  "Apparently, you're arguing that this court was snookered, the court of appeal was snookered, and everyone misunderstood what was happening other than yourself."

Smith:  "You know why?"

Court:  "That is your argument."

Smith:  "Absolutely.  It's an indisputable argument."

13

Court:   "Okay.  If it's indisputable, I assume you
petitioned the Supreme Court for review,
and they didn't take it, the review."

Smith:   "But it's not disputed by the defense.  It's not
disputed by the court, and it can't be disputed
because it's clear what the jury found."

Court:   "I'm not going to argue with you, counsel.
You're saying that this court erred, the Court
of Appeal erred, everyone erred but you. . . .
That's fine.  I'll give you five more minutes . . . ."

Smith again argued the court had ignored relevant authorities he'd cited, and defense counsel "still [had] an obligation . . . today to correct a false statement of law, a mixed motive; right?  They told this court that a mixed-motive analysis applied.  It's a false statement of law.  They're still not correcting it, but we're being accused of ethical lapses by our responses." After further colloquy, Smith once more argued defense counsel knew they were "supposed to tell this court, that the jury did not find [Snoeck] couldn't work . . . [and] that they misrepresented the law when they put mixed motive [*sic*], and that they ignored *Wallace*[7] every single time . . . ."

At that, the court replied, "I think you've stated this now at least a half a dozen times.  I'm going to turn to defense lawyer." Smith then asked to go through each of the 13 statements quoted in the tentative.  The court noted he had "used . . . much more

---

[7]     *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109.  We discussed *Wallace* in *Snoeck I* but found the facts distinguishable as to certain of Snoeck's arguments.  (See *Snoeck I*.)

14

than . . . the five minutes I told you ten minutes ago," but let Smith "take another minute and address whichever one you think is most important."  Smith read from the first three statements, arguing he didn't know why they were "worthy of cutting fees" or "what the problem [wa]s."

Defense counsel submitted, and the court adopted its tentative as its final ruling.  Smith then asked for "a statement of decision that explains why the statements that the court selected are worthy of fee cutting under the authority cited by the court?"  The court noted no statement of decision is required in attorney fee motions and adjourned the proceeding.  Snoeck filed a notice of appeal on June 7, 2022.

Five months later, on November 8, 2022, Smith sent defense counsel an email entitled, "Your most egregious and successful attempt to cause a court to abuse it[s] authority."  Smith wrote, "Do any of you know what rule of law the trial court was using to define the selections of emails you used to add another appeal to this litigation . . . slash reasonable FEHA fees by $457,000 based on some rule only he knows?"  He sent another email on November 29:  "I'll take that as a: [¶] 'We have no idea what rule he was applying, as we cited no authority in our brief for a reason—we had none.'  Not that I would quote you on my attempt to articulate your position, but it seems the inescapable conclusion here—no rule, just abuse. [¶] Fair?"[8]

With its respondent's brief, ExakTime filed a motion asking this court to take additional evidence under Code of Civil Procedure section 909 and rule 8.252(c) of 18 emails—including

_____

[8] Snoeck included these emails in his appellant's appendix. For what purpose, we cannot tell.

the two described above—Smith sent defense counsel after the trial court issued its April 18, 2022 order. ExakTime argues the evidence is relevant to show "Snoeck's counsel's uncivil conduct has continued since the order was issued," and further demonstrates the trial court acted within its discretion. We deny the motion. Nevertheless, we consider the November 8 and 29, 2022 emails, as Snoeck himself included them in his appellant's appendix.

**5.      *Snoeck's belated requests for judicial notice***

On July 7, 2023, three court days before oral argument, Snoeck moved this court to take judicial notice of what he asserted were excerpts from the record filed in *Snoeck I*. The pages Snoeck attached to his motion were not as they appeared in the prior record—counsel had altered the documents by adding argumentative margin notes and highlighting certain text. We deny Snoeck's motion. On July 10, two days before oral argument, Snoeck filed another motion, this time asking us to take judicial notice of orders the trial court filed in other cases. The orders are irrelevant to this appeal. We deny this second motion, as well.

## DISCUSSION

Snoeck contends the trial court erred in reducing his attorney fees by $457,863 to account for his counsel's incivility because: the fee reduction was not associated with any costs and thus was impermissibly imposed to punish Smith; the court had no legal or inherent authority to shift attorney fees as an "incivility sanction"; Smith's emails were "repeated attempts . . . to persuade ExakTime's counsel to correct their misrepresentations of facts and law to the court"; the court's shifting of fees for incivility undermined the FEHA's purpose;

16

reducing the fee award for Smith's uncivil email communications violated his First Amendment right to free speech; the court violated Smith's due process rights; and any " 'civility rule' " would be void for vagueness.

**1.**     ***Applicable law and standard of review***

Under the FEHA, "the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs." (Gov. Code, § 12965, subd. (c)(6).)  "Because fee awards to prevailing FEHA plaintiffs promote the important public policy in favor of eliminating discrimination in the workplace [citation], a ' "prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " ' [Citations.]  ' "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." ' [Citation.]"  (*Vines v. O'Reilly Auto Enterprises, LLC* (2022) 74 Cal.App.5th 174, 182; *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 990 (*Chavez*).)

"In order to calculate an attorney fee award under the FEHA, courts generally use the well-established lodestar method. The lodestar amount is simply the product of the number of hours spent on the case, times an applicable hourly rate." (*Caldera v. Department of Corrections & Rehabilitation* (2020) 48 Cal.App.5th 601, 607; see also *Ketchum, supra*, 24 Cal.4th at p. 1133 [the "lodestar figure [is] based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type"].)  " 'The trial court then has the discretion to increase or reduce the lodestar figure by applying a positive or negative " 'multiplier' " based on a variety of factors.' "  (*Taylor*

*v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249; *Chavez, supra*, 47 Cal.4th at p. 985 ["the resulting [lodestar] dollar amount is then adjusted upward or downward by taking various relevant factors into account"]; *Ketchum*, at p. 1134.) Those factors include, among others, the novelty and difficulty of the issues presented, the skill demonstrated in litigating them, and the contingent nature of the fee award. (*Ketchum,* at p. 1132; *Karton, supra*, 61 Cal.App.5th at p. 744.)

" 'A trial court may not rubberstamp a request for attorney fees, but must determine the number of hours reasonably expended.' " (*Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 38 (*Morris*).) Nevertheless, "[a] trial court is not required to state each charge it finds reasonable or unreasonable. A reduced award might be fully justified by a general observation that an attorney overlitigated a case." (*Karton*, *supra*, 61 Cal.App.5th at p. 744.) Thus, " 'when a " 'voluminous fee application' " is made . . . the court may . . . " 'make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure.' " ' " (*Morris,* at p. 40.) "But the court must clearly explain its reasons for choosing the *particular* negative multiplier that it chose; otherwise, the reviewing court is unable to determine that the court had valid, specific reasons for its across-the-board percentage reduction." (*Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 41 (*Warren*).) The trial court is not required to issue a statement of decision with regard to a fee award, however. (*Ketchum, supra*, 24 Cal.4th at p. 1140.)

"We review attorney fee awards for abuse of discretion. An experienced trial judge is in the best position to evaluate the value of professional services rendered in the trial court.

We presume the fee approved by the trial court is reasonable. We will not disturb the trial court's judgment unless it is clearly wrong.  The burden is on the objector to show error." (*Karton, supra*, 61 Cal.App.5th at p. 743.)  "No established criteria calibrate the precise size and direction of the multiplier, thus implying considerable deference to the trial court decisionmaking about attorney fee awards." (*Id.* at p. 745.)

Moreover, "this court must presume that the trial court considered all factors in reaching its decision, 'even though the court may not have mentioned or discussed them in its written ruling.' " (*Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240, 255 (*Mikhaeilpoor*).)  We have "no authority to disturb the trial court's factual findings if they are supported by substantial evidence." (*Ibid.*)

2.   ***The record shows Smith acted uncivilly, and his incivility was unjustified***

Snoeck argues the court impermissibly applied its downward multiplier to punish Smith for violating a "fictional" " 'civility' rule."  Incivility may not serve as a basis for attorney discipline by the state bar—yet—but all licensed California attorneys are expected to conduct themselves in a civil manner.[9]

---

[9]    The California Civility Task Force's (CCTF) initial September 2021 report recommended the State Bar amend its disciplinary rules to prohibit "repeated incivility and clarify[ ] that civility is not inconsistent with zealous representation." (Cal. Civility Task Force, Beyond the Oath: Recommendations for Improving Civility (Sept. 2021) p. 3 <https://caljudges.org/docs/PDF/California%20Civility%20Task%20Force%20Report%20 9.10.21.pdf> [as of Sept. 29, 2023], archived at <https://perma.cc/ DVT3-9B2L>.)  After receiving public comment on such a

Since 2014, the oath new attorneys of this state must take requires them to "vow to treat opposing counsel with 'dignity, courtesy, and integrity.' " (*Lasalle v. Vogel* (2019) 36 Cal.App.5th 127, 134 (*Lasalle*).)  Although Smith asserts he took the attorney oath before it was so revised, as an officer of the court he owed the court and opposing counsel " 'professional courtesy.' " (*Id*. at p. 132, quoting *Lossing v. Superior Court* (1989) 207 Cal.App.3d 635, 641 [attorneys' " 'responsibilities as officers of the court include professional courtesy to the court and to opposing counsel' "].)  Rather than a *new* requirement, the " 'civility oath' " added by the rules in 2014 "serves as an important *reminder* to lawyers of their general ethical responsibilities in the pursuit of all their professional affairs, including litigation." (*People v. Shazier* (2014) 60 Cal.4th 109, 147, fn. 17, italics added.)[10]  As the court stated in *Karton*, civility

proposed rule, the Office of Professional Competence asked the State Bar Board of Trustees to approve, among other amendments, adding rule 8.4.2 to the Rules of Professional Conduct, which would prohibit a lawyer from engaging in incivility in the practice of law.  (See Erika Doherty, State Bar Office of Prof. Competence, mem. to State Bar Bd. of Trustees (State Bar mem.), July 20, 2023 at p. 11 & Attachment E, p. 3 <https://board.calbar.ca.gov/docs/agendaItem/Public/agendaitem 1000031188.pdf> [as of Sept. 29, 2023], archived at <https:// perma.cc/8JMF-A3U3>.)

[10]      At the CCTF's recommendation, the State Bar also received public comment on, and the Board of Trustees has been asked to approve, an amendment to California Rules of Court, rule 9.7 requiring all licensed attorneys on active status to "submit a declaration containing" the civility language added to the

"is an ethical component of professionalism," *and* it "is socially advantageous [as] it lowers the costs of dispute resolution." (*Karton, supra*, 61 Cal.App.5th at p. 747.)[11]

Substantial evidence supports the trial court's finding that Smith was uncivil toward opposing counsel and the court, and his "ad hominem attacks were unnecessary for the zealous representation of his client." ExakTime presented undisputed evidence showing Smith accused its individual attorneys of telling the courts "lies," committing "fraud" and a "brazen con," making "misrepresentations" to the trial court and this court, engaging in "sleazy" and "cringeworthy" conduct, and "dup[ing] the court of appeal." Snoeck's briefing in the trial court also accused ExakTime of having "successfully used deliberate misrepresentations of law and fact" (italics omitted), "engaged in a knowing fraud on the trial court," and "engaged in calculated misrepresentations to the courts in this case." And, in his current briefing to this court, Snoeck continues to accuse ExakTime's counsel of making "intentional, calculated, and

_____

attorney's oath and annually "reaffirm the civility pledge." (See State Bar mem. at p. 10 & Attachment A, p. 1.)

[11] ExakTime argues the civility requirement, as explained in *Lasalle, supra*, 36 Cal.App.5th at p. 130, is based on section 583.130 of the Code of Civil Procedure, which states the policy of this state is that "all parties shall cooperate in bringing [an] action to trial or other disposition." The court invoked that section, however, in discussing the ethical obligation to warn opposing counsel before taking a default. (*Lasalle,* at pp. 135, 137; Code Civ. Proc., § 583.130, Law Revision Com. coms. [§ 583.130 "is consistent with statements in the cases of the preference for trial on the merits"].)

21

repeated misstatements of law and fact to the court," presenting a "fraudulent defense," telling a "lie," relying on "a second fraud" in this court, and "lack[ing] . . . integrity."

Despite these express condemnations of defense counsel's character, at the fee hearing Smith came across as almost incredulous that his communications with opposing counsel would be considered uncivil. He claimed not to know how certain statements were "worthy of cutting fees" and "d[id]n't see what the problem [wa]s."

Smith also acted with incivility toward the trial court. The court itself described Smith's tone during the October 2019 JNOV/motion for new trial hearing as " 'belittling and antagonistic' " and having " 'verged on the contemptuous.' " Smith certainly belittled the court in his emails to opposing counsel, claiming defense counsel made "a total fool of" (full capitals omitted), "exploited," and "duped" the trial court, and treated the trial court as an "easy mark." Snoeck's current briefing to this court asserts the trial judge engaged in "provocative misconduct" that could be a "potential excuse for any impropriety in [Smith's] remarks." And, Smith's apparent disdain for the trial court practically jumps off the pages of the reporter's transcript of the fee motion hearing.

Snoeck nonetheless contends these uncivil communications were justified. At the fee hearing, Snoeck repeatedly argued ExakTime's attorneys violated their duty of candor by misrepresenting the law and facts in arguing a mixed motive analysis applied to ExakTime's decision to terminate Snoeck's employment. Smith argued his emails were necessary to "call out" defense counsel's unethical behavior—their purported misrepresentations to the court—and complained the court

22

had not addressed their ethical lapses. He argued ExakTime was being "rewarded 450,000-plus dollars for . . . upsetting us enough to send e-mails calling . . . out" "the unethical conduct that has not been denied to this date . . . . And to call out the rule of candor." He claimed it was defense counsel's misstatements that increased the attorney fees in the case.

In *Snoeck I*, we concluded the trial court erred in giving the jury the mixed motive instruction proffered by ExakTime, but Snoeck wasn't prejudiced. (*Snoeck I*.) That conclusion—that this case did not fit the mixed-motive mold—did not imply or somehow demonstrate that, as Snoeck seems to contend, defense counsel misrepresented the law and facts to the trial court or to this court. In litigation, attorneys regularly dispute how the law—and what specific law—applies to the facts of a particular case. One side will be wrong. But that does not mean the side that is "wrong" tried to convince the court to adopt a theory it knew was legally erroneous. Moreover, an employer *lawfully* may terminate an employee's employment due to the employee's disability, e.g., where the employee cannot perform his or her job even with a reasonable accommodation or where the requested accommodation is not reasonable. (See Gov. Code, § 12940, subd. (a)(1); *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 226–227.) In *Snoeck I*, we essentially concluded the jury could have made such a finding. (*Snoeck I*.) We need not repeat that analysis here.

Suffice it to say Snoeck disagreed. He argued to the trial court, as he did in his petition for rehearing to this court, ExakTime's counsel *falsely* stated the jury could have found Snoeck would have been unable to return to work. We already rejected this contention in denying Snoeck's petition

23

for rehearing. In affirming the judgment, we had concluded—on the record before us—the jury could have made this finding. And, to make *this* record clear, we were not "duped" in so finding.[12] We remind plaintiff's counsel there has been no finding that defense counsel misrepresented the law or facts to the trial court or to this court.

Snoeck also argues Smith's accusatory emails to defense counsel were effective because ExakTime changed its tactics on appeal, and its counsel never denied Smith's accusations. First, ExakTime's focus on different arguments on appeal is not an admission of wrongdoing. Respondent's counsel's job on appeal is to show no prejudicial error occurred, not to retry the underlying case. Second, ExakTime's counsel had no obligation to respond to Smith's accusations and ad hominem attacks. Indeed, as Smith sent several of those emails well after the close of business or on the weekend, it seems unlikely he expected counsel to respond. And, many of his emails posed rhetorical questions or personal musings.[13] In any event, that

---

[12] We also take issue with Snoeck's accusation that this court has "sat on" and is "slow-playing this appeal" in his petition to transfer filed with the California Supreme Court. Snoeck initially missed the deadline to file his opening brief. The case was not fully briefed until April. This court set the matter for argument on the first date available considering other pending matters and court business.

[13] Snoeck's briefs filed with this court also are peppered with rhetorical questions and side comments. For example, "Also, someone might want to inform the State Bar, The Civility Task Force, and all lawyers and judges – CCP 583.130 has, according to ExakTime, prohibited uncivil emails outside of court *with*

---

defense counsel did not deny Smith's accusations neither equates to a tacit admission that they misrepresented the law or facts— or made false statements—nor compels a finding that they did. Defense counsel very well could have decided—and rightfully so —any response to Snoeck's counsel would have turned into an unproductive and juvenile "did not, did so" sparring match.

Litigation by its nature is contentious; the parties are in court because they do not agree. One side's frustration with the other side's legal theory is understandable. Certainly, attorneys must advocate for their clients' positions, point out the flaws in opposing counsel's argument, and express disagreement with the court. But Snoeck's counsel's frustration did not give him a license to personally attack defense counsel and belittle the trial court. Smith's incivility does not reflect persuasive advocacy. A reasonable attorney would not believe that communicating with opposing counsel in such a way would "bring them around," so to speak. Nor does antagonizing the trial court help further one's client's cause. In short, Smith's beratement of opposing counsel and belittling of the trial court were unnecessary to advocate zealously on Snoeck's behalf.

3.      *The court had discretion to apply a negative multiplier to account for counsel's incivility*

"The benchmark in determining attorney fees is reasonableness." (*Karton, supra*, 61 Cal.App.5th at p. 744.) In *Karton*, a trial court limited prevailing plaintiffs' recovery of statutory attorney fees to about one third of the lodestar amount

---

*punishment to be decoded at court's whim* since 1984 (when it was enacted). *Who knew?*" (Original italics.) Comments like these are not helpful. They have no place in appellate briefing.

they had requested, after it found the requested fees were unreasonable—in part due to counsel's overlitigation of the matter and lack of civility in plaintiffs' briefing. (*Id.* at pp. 738, 741–743.)

The appellate court's opinion affirming the order begins, "Trial judges deciding motions for attorney fees properly may consider whether the attorney seeking the fee has become personally embroiled and has, therefore, overlitigated the case. Similarly, judges permissibly may consider whether an attorney's incivility in litigation has affected the litigation costs. [¶] Here, the trial judge found . . . [the] fee motion triggered these concerns." (*Karton, supra*, 61 Cal.App.5th at p. 738.)

At the attorney fee hearing, Snoeck latched on to this introduction. As he did below, he essentially argues *Karton* supports reducing attorney fees for incivility *only* if the attorney's incivility directly caused increased costs, and his emails could not have increased costs. He contends "ExakTime did not and could not show that any fees were incurred by the emails because Snoeck did not request fees for them and ExakTime did not respond to them." Snoeck's brief also notes Smith's "tone of voice at a hearing could not have increased fees," and seems to argue the cited emails were not tied to increased costs because most "were sent post trial."[14] He thus argues the $457,863 fee reduction was punitive because it was "wholly untethered to any cost incurred as a result of 'incivility.' "

---

[14] Snoeck's apparent contention that Smith's posttrial incivility would not have increased costs is perplexing. Based on Smith's billing records, of 1,239.55 hours submitted on this case, he spent about 276.4 hours through trial, leaving about 963.15 hours spent posttrial from June 30, 2019 to May 2, 2021.

26

The record supports the trial court's implied finding that Smith's "repeated and apparently intentional lack of civility throughout the entire course of this litigation"—and seeming personal embroilment in the matter—resulted in inefficient, fractious, and thus more costly, litigation.  As the court in *Karton* aptly observed:

> "Incivility between counsel is sand in the gears. [¶] Incivility can rankle relations and thereby increase the friction, extent, and cost of litigation.  Calling opposing counsel a liar . . . can invite destructive reciprocity and generate needless controversies.  Seasoning a disagreement with avoidable irritants can turn a minor conflict into a costly and protracted war. . . .  All sides lose, as does the justice system, which must supervise the hostilities. [¶] By contrast civility in litigation tends to be efficient by allowing disputants to focus on core disagreements and to minimize tangential distractions.  It is a salutary incentive for counsel in fee-shifting cases to know their own low blows may return to hit them in the pocketbook." (*Karton, supra*, 61 Cal.App.5th at p. 747.)

The trial court certainly could have found Smith's repeated accusations against defense counsel of lying, knowingly misrepresenting the law and facts, and engaging in fraud similarly created unnecessary and time-consuming hostilities and distractions.  Smith spent time and energy writing the emails, and we can infer defense counsel read them, even if they

did not respond.[15]  Attacks on ExakTime and its counsel also were included in briefing for which Snoeck's counsel billed time. ExakTime's counsel certainly would have had to spend time reading that briefing.  The court also was bombarded with plaintiff's counsel's attacks on defense counsel and counsel's uncivil demeanor toward the court.  That Smith continued his attacks—even months after the trial court entered its attorney fee order—also demonstrates how personally embroiled he had become in this litigation.

Smith seems to argue that each statement of his that the trial court quoted had to be tied to an increase in costs for the trial court to reduce Snoeck's attorney fees based on those statements.  The court's order quotes 13 statements from 12 emails Smith sent that ExakTime provided in its opposition to the fee motion.[16]  The court noted, however, that those statements demonstrated "[s]ome of [Smith's] incivility." In other words, the court did not limit the basis of its order

---

[15]    Snoeck asserts he did not request fees for the emails, but ExakTime argued Smith's proffered billing records appeared to include time spent drafting them.

[16]    Snoeck's repeated complaint that Smith was not permitted to address each of the quoted statements is specious.  The trial court gave Smith at least 20 minutes to make his argument. He spent his time—even after being warned he had only a few minutes left—rehashing his argument about ExakTime's misrepresentations and false statements, the trial and appellate court's mistakes, and—in the trial court's words—the courts having been "snookered."  The court nevertheless permitted Smith to "take another minute" to address whichever statement he thought was most important.  Smith addressed three.

28

to the quoted statements but provided them as examples of Smith's incivility. Moreover, the court was not required to identify every unreasonable charge related to Smith's incivility to justify a downward adjustment to the lodestar. (*Karton*, *supra*, 61 Cal.App.5th at p. 744; see *Morris*, *supra*, 41 Cal.App.5th at p. 40.)

In any event, we do not agree with Snoeck that the trial court had no authority to reduce the lodestar based on incivility unless the incivility caused an increase in specific costs. As the court in *Karton* noted, "Civility is an aspect of skill." (*Karton*, *supra*, 61 Cal.App.5th at p. 747.) Smith seems to ignore this point—that his incivility reflects on his skill as a professional— a factor our high court has stated may be considered in adjusting the lodestar. (*Ketchum*, *supra*, 24 Cal.4th at p. 1132 [trial court may adjust the lodestar based on "the skill displayed in presenting" the legal issues]; *Karton*, at p. 747 [noting "[a]ttorney skill is a traditional touchstone for deciding whether to adjust a lodestar," which includes civility].)

Thus, although incivility can increase the costs of litigation, the trial court was not required to find Smith's comments directly caused an increase in ExakTime's or Snoeck's fees before applying a downward adjustment to the lodestar. Courts may adjust the lodestar figure upward or downward " 'in order to fix the fee at the fair market value for the legal services provided.' " (*Ketchum*, *supra*, 24 Cal.4th at p. 1134, quoting *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) The court thus could have found the lodestar dollar figure here exceeded the fair market value for Smith's legal services given his lack of civility. As the court in *Karton* put it, "Excellent lawyers deserve higher fees, and

29

excellent lawyers are civil." (*Karton, supra*, 61 Cal.App.5th at p. 747.) Awarding the same amount of attorney fees to an uncivil lawyer as one who is civil thus would not constitute a reasonable fee.

Another court explained, in discussing an upward lodestar adjustment, "As to the skill of the attorneys in litigating the case, that factor necessarily is reflected in the lodestar figure. The more skillful and experienced the attorney the higher his or her hourly charges will be. It follows that the skill of an attorney will justify enhancing the lodestar figure only if the skills exhibited are beyond those that might be expected of attorneys of comparable expertise or experience." (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1176.) Our high court similarly cautioned, "[A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." (*Ketchum, supra*, 24 Cal.4th at p. 1139.)

Applying the same logic here, a downward departure from the lodestar figure is justified where the attorney demonstrates he is less skilled than would be expected of an attorney with comparable expertise or experience, billing at the same rate. The evidence also supports the trial court's implied finding that plaintiff's counsel presented the issues with less skill—through his incivility—than would be expected of comparably experienced attorneys charging $750 per hour who conducted themselves with civility. Under *Ketchum* and *Karton*, the trial court thus had discretion to reduce the lodestar figure based on counsel's skill reflected by his incivility. And, as we discussed, the record

30

supports the court's implied finding that an attorney of similar experience would not have believed making personal attacks on opposing counsel, and repeating those accusations to the court, would be an effective strategy to persuade opposing counsel its position was wrong or to persuade the court his client's position was right.

4. ***The record supports the court having reduced the adjusted lodestar for an appropriate, case-specific reason***

As we noted, "when a trial court applies a substantial negative multiplier to a presumptively accurate lodestar attorney fee amount, the court must clearly explain its case-specific reasons for the percentage reduction." (*Warren, supra*, 30 Cal.App.5th at p. 37.) That way, a reviewing court can determine if the trial court reduced the fee award for valid reasons. (*Id.* at p. 41.) The trial court did so here. It specifically explained it was applying the .4 negative multiplier to account for counsel's "repeated and apparently intentional lack of civility throughout the entire course of this litigation." And, before doing so— citing *Karton*—the court specifically noted, "Civility is not just a moral good. 'Attorney skill is a traditional touchstone for deciding whether to adjust a lodestar. . . . Civility is an aspect of skill.'" The court's reason for applying the .4 negative multiplier thus was clear and, as we discussed, it was valid. (*Cf. Warren*, at pp. 40–41 [remanding matter in consumer protection case where it was unclear to what extent the court's application of a negative .33 multiplier to reduce statutory attorney fee award was based on stated impermissible reason— tying amount of fees to plaintiff's modest damages award—and

31

other permissible reasons the court gave to arrive at a reasonable fee].)

Snoeck notes that, after discussing the *Ketchum* factors and ExakTime's arguments—including that counsel's requested hours were not credible due to " 'improper and unprofessional conduct' "—the court stated it had " 'consider[ed] all the relevant factors' " and applied the 20 percent reduction " 'to address the above concerns.' " (Italics and boldface type omitted.) Snoeck thus argues the court already had accounted for attorney skill and unprofessionalism when it initially reduced the lodestar figure.

We do not agree. The court's order is clear and methodical. The court first reduced plaintiff's requested lodestar figure by 20 percent to address various concerns with the reasonableness of the number of hours plaintiff's counsel claimed, including—among other factors—overstaffing, excessive and vague billing, duplicative work, and the degree of plaintiff's success. The court then applied a *positive* multiplier to the lodestar figure it calculated to account for the contingent nature of the attorney fees and plaintiff's counsel's delayed payment. After making those calculations, the court specifically addressed counsel's incivility under a separate heading. We therefore can conclude the court found the adjusted lodestar—after applying the 1.2 positive multiplier—did not reflect a reasonable fee award in light of plaintiff's counsel's sub-par skill (due to his incivility) in presenting the issues. Moreover, in determining the initial lodestar amount, the court accepted Snoeck's attorneys' rates as within the prevailing market rates given their "prior experience." The court thus had not adjusted the lodestar to account for the

32

effect counsel's incivility had on those otherwise reasonable hourly rates until it applied the .4 negative multiplier.

Snoeck nevertheless insists the court applied the .4 multiplier as a sanction. A trial court may not reduce attorney fees "merely for the purpose of punishing" plaintiff or plaintiff's counsel. (*Ketchum, supra,* 24 Cal.4th at p. 1142; *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 775 & fn. 5.) We do not agree with Snoeck's contention, however, that the court reduced the lodestar figure to punish plaintiff's counsel for his First Amendment protected communications, litigation strategy, or misconduct. After determining the lodestar figure, "the trial court was entitled to consider whether that sum should be reduced to a reasonable figure under the applicable equitable principles." (*EnPalm*, at p. 774.) In *EnPalm*, appellants— prevailing parties entitled to contractual attorney fees—argued the trial court reduced their attorney fees as punishment for a party's "litigation misconduct." (*Id.* at pp. 772, 775.) The appellate court agreed a trial court may not reduce a prevailing party's attorney fees "for purely subjective reasons, such as its views on the merits of the case, or antipathy toward a party, her counsel, or counsel's litigation strategy . . . [, or] solely to punish a party for such reasons." (*Id.* at p. 775, fn. 5.) The court there affirmed the trial court's reduction of the lodestar sum, however, because the party's litigation conduct rendered most of the claimed fees unnecessary. (*Id.* at pp. 772–773, 775, fn. 5.)

We are convinced the trial court did not choose to apply the negative .4 multiplier to sanction or punish plaintiff's counsel. The court properly followed the lodestar adjustment method to arrive at a reasonable attorney fee award given the relevant case-specific factors that weighed in favor of both

33

augmenting and diminishing the lodestar figure. We do not read the court's statements about Smith's incivility as disapproving of his litigation strategy—or seeking to punish Smith or Snoeck—but as a commentary on Smith's skill in executing that strategy in light of his incivility.

Snoeck also seems to contend the court's reliance on *Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242 Cal.App.4th 1265—which involved sanctions rather than the reduction of an attorney fee award—demonstrates it imposed the .4 negative multiplier to punish Smith.[17] The court quoted the following passage from that case: "The absence of civility displayed by some practitioners heightens stress and debases the legal profession. Those attorneys who allow their personal animosity for an opposing counsel or an opposing party to infect a case damage their reputations and blemish the dignity of the profession they have taken an oath to uphold." (*Id.* at pp. 1266–1267 [affirming order granting terminating sanctions based on a self-represented attorney's threats and open contempt for the court].) Nevertheless, we can infer the court cited the case to demonstrate the importance of civility in litigation, not to signal it was applying the negative multiplier to sanction plaintiff's

---

[17] Smith insinuates the court chose to reduce the lodestar by 40 percent because that amount is close to the fees attributable to Smith's claimed hours. Smith submitted time records indicating he spent 1,239.55 hours working on the case—including Snoeck's appeals—from March 23, 2019 through May 2, 2021. He asked for only 675 of those hours to be included in the lodestar; we presume he recognized the total hours he spent was unreasonable. At $750 per hour, 675 hours is equivalent to $506,250.

counsel.  Moreover, the court's order specifically recognized civility was not just a moral good but an aspect of attorney skill. And, as discussed, ample evidence supports the court's reduction of the lodestar to account for plaintiff's counsel's skill given his incivility toward opposing counsel and the court.  (Cf. *Edgerton v. State Personnel Bd.* (2000) 83 Cal.App.4th 1350, 1363 [affirming application of positive multiplier given, in part, " 'the skill displayed by plaintiff's counsel in overcoming the intransigent opposition of defendant' "].)

Nor did the court contravene the principles of the FEHA in doing so.  The lodestar adjustment method—which gives the court the discretion to augment *or diminish* the lodestar figure to arrive at a reasonable fee—is the gold standard for determining an attorney fee award under the FEHA.  (See, e.g., *Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1240 [court determines reasonable fee award under fee-shifting statutes including FEHA first "by deciding 'the reasonable hours spent' on the case and multiplying that number by 'the hourly prevailing rate for private attorneys in the community' " and then may "adjust the lodestar figure in light of a number of relevant factors that weigh in favor of augmentation or diminution"]; see also *Chavez, supra*, 47 Cal.4th at pp. 976, 985 [recognizing courts compute attorney fees awarded under the FEHA "based on the lodestar adjustment method," which permits the trial court to adjust its calculation of the lodestar dollar amount "upward or downward by taking various relevant factors into account" and affirming denial of FEHA plaintiff's fees under the circumstances]; *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 647 (*Flannery*) [explaining trial court's exercise of discretion in awarding attorney fees under the FEHA "must be based on

a proper utilization of the lodestar adjustment method, both to determine the lodestar figure and to analyze the factors that might justify application of a multiplier" and finding error in court's application of a positive multiplier when it appeared already to have accounted for the factors it reasoned supported a multiplier when it set the lodestar counsel's hourly rate].)

Snoeck nevertheless contends the court's application of the downward multiplier undermined the FEHA's purposes and impermissibly shifted fees to defendant. None of the cases on which Snoeck relies supports this position. For example, in *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 949, our supreme court noted the Legislature made clear the " 'FEHA provides for an award of attorneys' fees to a prevailing plaintiff, but not to a defendant except under narrow circumstances,' in order to 'reflect[ ] the public policy that society should incentivize enforcement of our civil rights laws.' " In other words, the FEHA provides an incentive for counsel to take plaintiffs' cases by awarding prevailing plaintiffs fees and costs and ensuring plaintiffs, if they lose, are not equally liable for defendants' fees and costs, unless their claims are frivolous. The cases on which Snoeck relies merely state this policy; they do not preclude the reduction of a prevailing FEHA plaintiff's requested attorney fees as somehow impermissibly shifting fees. (See *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 (*Williams*) [holding, as with attorney fees, a prevailing FEHA defendant should not be awarded costs "unless the court finds the action was objectively without foundation when brought, or the plaintiff continued

36

to litigate after it clearly became so"]; and *Pollock*, at pp. 950–951 [same with appellate costs and fees].)[18]

As the appellate court in *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 395 —another case on which Snoeck relies—reiterated, a trial court first must base its calculation on the actual hours counsel spent on the case, "less those that result from inefficient or duplicative use of time. [Citation.] Then the court must adjust the resulting fee to fulfill the statutory purpose of bringing 'the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-service basis.' " (Citing *Ketchum, supra*, 24 Cal.4th at pp. 1132–1133.)[19] That's exactly what the trial court did here. It reduced counsel's hours for overbilling and duplicative work and then applied a 1.2 multiplier to account for Smith's contingent fee. That the court went on to reduce the award to arrive at a reasonable fee based on counsel's diminished

---

[18] Snoeck also relies on *Flannery v. Prentice* (2001) 26 Cal.4th 572. But there, our high court held the ownership of "unassigned attorney fees" awarded under the FEHA vested "in counsel rather than the litigant (to the extent fees are not otherwise paid)." (*Id.* at pp. 584–585 [noting vesting ownership of FEHA fees in counsel in those circumstances "diminish[ed] the risk of noncompensation or undercompensation, [would] enhance the likelihood that attorneys who undertake FEHA cases will be fully compensated, and to that extent [would] enhance the fee provision's effectiveness in encouraging counsel to undertake FEHA litigation"].)

[19] Snoeck misattributes part of this quoted text as from *Williams, supra*, 61 Cal.4th at pp. 114–115.

skill due to his incivility hardly runs afoul of the above policy. After all, "[a]s the prevailing party, [Snoeck] was entitled only to 'reasonable attorney fees' (Gov. Code, § 12965, subd. (b)), not reasonable fees plus a windfall." (*Flannery, supra,* 61 Cal.App.4th at p. 647.) Accordingly, the court's reduction of the adjusted lodestar figure by 40 percent did not violate the FEHA or undermine its principles.

5. ***The court's reduction of the adjusted lodestar by 40 percent does not shock the conscience***

As to the amount of that downward adjustment, on this record, we are not convinced the court was clearly wrong in determining a .4 negative multiplier would "fix" the adjusted lodestar figure "at the fair market value for the legal services provided" given counsel's incivility. (*Sonoma Land Trust v. Thompson* (2021) 63 Cal.App.5th 978, 983.) The trial judge was the best judge of the value of plaintiff's counsel's professional services rendered in his court. (See *PLCM Group, supra*, 22 Cal.4th at p. 1095; *Ketchum, supra*, 24 Cal.4th at p. 1132.) We cannot say the amount awarded here was " ' "so . . . small that [it] shocks the conscience and suggests that passion or prejudice influenced the determination." ' " (*Mikhaeilpoor, supra*, 48 Cal.App.5th at p. 246.)

By way of comparison, the trial court in *Karton* reduced the lodestar figure by two-thirds—awarding attorney fees for 200 of 600 hours counsel spent. (*Karton, supra*, 61 Cal.App.5th at p. 743.) The court noted the lack of civility in plaintiffs' counsel's briefing, describing it as " 'replete with attacks on defense counsel such as that[:] defense counsel filed "knowingly false claims of witness tampering[;]" "her comments were frivolous[;]" [and] something was "typical of the improper tactics

38

employed by defendants and their counsel." ' " (*Id*. at pp. 741–742.)  Rather than apply a separate multiplier to account for that incivility as the court did here, the court in *Karton* applied one overall reduction of almost 67 percent to account for several factors, including the simplicity of the issues, plaintiff's overlitigation of a relatively small dispute in part due to the plaintiff-attorney's "personal embroilment in the matter," and the lack of civility in plaintiffs' briefing.  (*Id*. at pp. 741–743, 746–747.)  In the end, plaintiffs in *Karton* received only 33 percent of their attorney fees, whereas Snoeck's final award constituted about 57 percent of his claimed lodestar fees.  As we cannot conclude no reasonable judge would have made the same downward adjustment as the trial court did here under the circumstances, we find no abuse of discretion.

**6.    *Snoeck's other arguments are untenable***

Snoeck's remaining arguments are grounded on his contention the court reduced his counsel's attorney fees as a sanction or punishment.  As we have concluded the court imposed the negative multiplier based on a permissible factor—not as a sanction or to punish Smith—and did not abuse its discretion in setting the negative multiplier at .4, they also fail.

First, as the court did not impermissibly reduce or shift fees to punish or sanction Smith or his client, it also did not deprive Smith of any purported due process rights in reducing his requested attorney fees.  Similarly, the court did not violate Smith's First Amendment rights by punishing him for advocating his client's interests.  As discussed, the court did not sanction Smith's speech.  Rather, the court implicitly found plaintiff's attorney fees were inflated when considering the negative effect counsel's incivility had on his skill in presenting the issues.

39

(See, e.g., *Mikhaeilpoor, supra*, 48 Cal.App.5th at p. 246 [reviewing court "infers that a request for fees is inflated when the trial court substantially reduces the requested amount"].) And, as we discussed, the record supports the trial court's finding that Smith's uncivil communications and ad hominem attacks were not necessary for the zealous representation of his client. Finally, as the court did not sanction Smith for misconduct under a " 'civility rule,' " as Snoeck describes it, we need not consider whether a civility rule would be void for vagueness.

## DISPOSITION

We affirm the trial court's April 18, 2022 order awarding attorney fees. The parties are to bear their own costs on appeal.

EGERTON, J.

We concur:

EDMON, P.J.                    HEIDEL, J.[*]

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 10/25/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEVE SNOECK, | B321566 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC708964 |
| v. | |
| EXAKTIME INNOVATIONS, INC., | ORDER PUBLISHING OPINION AND DENYING PETITION FOR REHEARING [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter, filed on October 2, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

Appellant's petition for rehearing, filed on October 17, 2023, is denied.

There is no change in the judgment.

_____

EGERTON, J.                    EDMON, P. J.                    HEIDEL, J.*

_____

*       Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.